[No. B004638. Second Dist., Div. One. June 29, 1984.]

In re CHARLES EDWARD THOMAS on Habeas Corpus.

**COUNSEL**

Maxwell S. Keith for Petitioner.

DeWitt W. Clinton, County Counsel, and Richard E. Townsend, Deputy County Counsel, for Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Charles Edward Thomas petitions for a writ of habeas corpus, alleging that he was excluded from the work furlough program established by Los

Angeles County, pursuant to Penal Code section 1208, in violation of his constitutional right to procedural due process.

## STATEMENT OF FACTS

Petitioner, a licensed physician, was convicted upon a guilty plea to two counts of violating Health and Safety Code section 11371. He was granted probation on condition that he serve six months in the Los Angeles County jail. Execution of the sentence was stayed until November 10, 1983.

In October 1983, petitioner applied for admission to the work furlough program administered by the Los Angeles County Probation Department pursuant to Penal Code section 1208. Toward that end, he had an interview appointment with a Mr. Rogue of the work furlough program at 9 a.m. on October 14. Petitioner's automobile malfunctioned and he was obliged to rent a replacement vehicle. As a consequence, he did not arrive for his appointment until 10:15 a.m. At that time, the receptionist told petitioner Mr. Rogue had gone for the day and petitioner should call him on Monday, October 17. Petitioner did so, at which point Mr. Rogue informed him he had been refused admittance to the work furlough program after a review of his records. Mr. Rogue represented the rejection was not a result of petitioner's missed interview appointment; rather, petitioner was ineligible for the program because he had been convicted of a drug-related offense.

Thereafter, Attorney Barbara Simmons spoke with C.A.I. Director Christine Reeves. On October 25, 1983, Ms. Reeves advised Attorney Simmons by letter that "the nature of Dr. Charles Thomas' offense precludes his acceptance in the Work Furlough program. [¶] Although applications are evaluated on a case-by-case basis, the fact that Work Furlough inmates are housed in a minimum security jail causes us to carefully review all cases with any type of drug involvement."

Work furlough intake criteria state, in pertinent part, "The Sheriff might preclude a group or class of offenders or a specific offender as not suitable for placement in the minimum jail detention facility where the work furlough offenders are housed. These are offenders who have demonstrated behavior requiring a more structured setting. The arrest record and the present conviction is examined for sex offenses, narcotic involvement and patterns of violence or escape. The offender's personal behavior and attitudes must be compatible with the inmate population in a minimum security facility." Petitioner was not advised of the intake criteria, through Attorney Simmons, until after his rejection from the program.

On November 4, 1983, petitioner filed a petition for writ of error coram nobis, seeking to vacate his guilty plea. On November 15, Attorney Max-

well S. Keith telephoned supervising deputy work furlough administrator Alma Wong in the hope of persuading the administrator to reconsider petitioner's exclusion from the program in the event his pending petition was denied. Attorney Keith first spoke to a gentleman whose name he no longer can recall. This gentleman informed Attorney Keith that petitioner was automatically excluded from the program by reason of his drug-related conviction. Later in the day, Attorney Keith spoke directly to Ms. Wong, who also informed him petitioner was automatically excluded from the program due to the nature of his conviction.

According to Ms. Wong, petitioner's failure to meet his scheduled interview appointment made it impossible to obtain any additional information regarding his proposed work furlough employment. Ms. Wong maintains that the nature of the drug-related offense, proposed employment and attendant circumstances are the basic factors in determining denial of admission to the program, not the mere fact the offense is drug-related. As an example, she stated a person whose present offense is a minor one, such as a case of simple possession or driving under the influence, might gain admission to the program if the circumstances indicated such a person would not have access to drugs or have an opportunity to repeat the behavior. Inasmuch as petitioner's offense involved the distribution of controlled substances in connection with his employment and he proposed to be employed at a medical facility, she concluded he would have easy access to controlled substances and this precluded his admission to the program.

On December 16, 1983, Los Angeles County Sheriff's Captain John L. Biard of the hall of justice jail wrote to County Counsel DeWitt W. Clinton. Captain Biard stated, "It has come to our attention that Dr. Charles E. Thomas has applied to the Probation Department for Work Furlough status. This inmate pled guilty and was convicted of two drug-related violations of the Health and Safety Code while in the performance of his job; thus the possibility exists that free access to his occupation would enable this inmate to introduce narcotic contraband into this facility. It is also probable that Dr. Thomas would be pressured and coerced by fellow inmates for special favors, once it became known that he had access to highly coveted drugs. [¶] It is the Department's professional judgment that Dr. Thomas should be denied his petition for Work Furlough status. This opinion is rendered for his own personal safety, as well as the more effective functioning of this custodial facility."

In support of his petition for writ of habeas corpus, petitioner has presented the declaration of Rodrigo Flores, M.D., who owns and operates the clinic in Commerce, California, at which petitioner had been employed in the practice of medicine since May 1983. Dr. Flores declares: "I have

found Dr. Thomas to be not only an excellent physician but extremely conscientious and meticulous in his treatment of patients. I am fully aware of Dr. Thomas' conviction and sentence. . . . It does not detract one iota from my estimation of him as a fine and honorable person and physician. Dr. Thomas is very welcome at the clinic. We have a substantial practice and both need and went [sic] him to continue his association. I have been made aware that Dr. Thomas has been denied Work Furlough privileges partly because the sheriff fears the doctor might be tempted or persuaded to bring drugs into the County Jail. This is ridiculous as Dr. Thomas will not be writing any prescriptions for Schedule II, II (sic) and IV substance[s] because his license to do so has expired. Although the clinic does have some Schedule IV samples to dispense, and some injectibles for pain, they are kept under lock and key and Dr. Thomas will not have access to these materials."

Petitioner's convictions stem from his earlier employment at a different medical facility. The probation report submitted in connection with petitioner's sentencing recommends that he be placed in the work furlough program.

## CONTENTION

Petitioner contends the due process clauses of the California Constitution require that an individual be granted procedural protections prior to his exclusion from a Penal Code section 1208 work furlough program (Cal. Const., art. I, § 7, subd. (a); id., § 15) and the procedure followed by the Los Angeles County Probation Department in its administration of the work furlough program denied him those protections. For the reasons set forth below, we agree.

## DISCUSSION

We begin our analysis with an examination of decisions interpreting the federal due process clause. Those cases interpreting the federal clause hold that procedural protection beyond the simple freedom from arbitrary or capricious action is due when a prisoner has a right or entitlement to something derived from the Constitution, a statute, or established by an agency's practice. (Durso v. Rowe (7th Cir. 1978) 579 F.2d 1365, 1369.) Absent such entitlement, "[t]he mere extension to prisoners of institutional programs by established prison policy is, therefore, not a sufficient basis . . . to invoke due process." (Solomon v. Benson (7th Cir. 1977) 563 F.2d 339, 342-343.)

Subdivision (b) of Penal Code section 1208 provides in pertinent part: "When a person is convicted of a misdemeanor and sentenced to the county

jail, or is imprisoned therein for nonpayment of a fine, for contempt, or as a condition of probation for any criminal offense, . . . the work furlough administrator may, if he concludes that such person is a fit subject therefor, direct that such person be permitted to continue in his regular employment, if that is compatible with the requirements of subdivision (d) [return during hours of nonemployment and confinement within a jail facility], or may authorize the person to secure employment for himself, unless the court at the time of sentencing or committing has ordered that such person not be granted work furloughs."

By clear language, section 1208 confides the determination of fitness and acceptance into a work furlough program solely to the discretion of the work furlough administrator. Exclusion is not in any way conditioned on the terms of the statute. Accordingly, a prisoner has no right or entitlement to acceptance in the program and his interest therein does not fall within the scope of due process liberty warranting some degree of protection under the traditional federal analysis. This determination is not dispositive of the issue, however.

In interpreting the due process clauses of the California Constitution (Cal. Const., art. I, § 7, subd. (a); *id.*, § 15), *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622] criticized the federal approach. In the California Supreme Court's analysis, that approach "fails to give sufficient weight to the important due process value of promoting accuracy and reasonable predictability in governmental decision making when individuals are subject to deprivatory action." (*Id.*, at p. 267.) The court further reasoned that the federal approach "undervalues the important due process interest in recognizing the dignity and worth of the individual by treating him as an equal, fully participating and responsible member of society." (*Ibid.*)

As a consequence, *Ramirez* held that the application of the due process clauses of the California Constitution "must be determined in the context of the individual's due process liberty interest in freedom from arbitrary adjudicative procedures. Thus, when a person is deprived of a statutorily conferred benefit, due process analysis must start not with a judicial attempt to decide whether the statute has created an 'entitlement' that can be defined as 'liberty' or 'property,' but with an assessment of what procedural protections are constitutionally required in light of the governmental and private interests at stake." (25 Cal.3d at pp. 263-264.) While Penal Code section 1208 does not confer a statutory entitlement on prisoners, in the form of an absolute right *but for* certain conditions, it does confer on prisoners such as petitioner a statutory benefit—even though that benefit may be deemed a mere hope or expectancy.

Once the existence of a statutory benefit is established, *Ramirez* notes that "due process safeguards required for protection of [those] statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citations omitted.] This approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity. Accordingly, it places front and center the issue of critical concern, i.e., what procedural protections are warranted in light of governmental and private interests." (25 Cal.3d at p. 268.)

■ Enumerating criteria for determining what process is due, *Ramirez* states, "the extent to which due process relief will be available depends on a careful and clearly articulated balancing of the interests at stake in each context . . . . More specifically, identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (25 Cal.3d 260, 269.)

■ Applying the *Ramirez* criteria to the instant matter yields the following analysis: Petitioner's interest in admission to the work furlough program is an important one. While it does not rise to the level of the grievous loss of liberty an individual may suffer in other contexts, work furlough nonetheless would not only free him from some of the restrictions of confinement in jail facilities, but would also enable him to maintain his community and professional ties, his professional skills and his personal dignity. Moreover, the county itself has a considerable interest in affording work furlough status to all potentially successful applicants. Participation in the work furlough program tends to keep the families of those furloughed from becoming dependent upon public funds and, additionally, speeds the useful reentry into society of the participants, thereby enhancing the chances of rehabilitative success.

We are equally cognizant, however, of the county's countervailing interests. In the instant context, as in that considered in *Ramirez,* the evaluation of an individual's probable success on work furlough and the effect of including the individual in the general population of furlough participants on the successful participation of others is inherently subjective, requiring the

cumulative appraisal of many and varied considerations. (25 Cal.3d 260, 273.) The county has an important interest in making such evaluations in a manner which preserves the overall success and integrity of the work furlough program. Therefore, administrators must be afforded the greatest possible discretion, consonant with the applicant's rights, in making the necessary evaluations. We further recognize that the type of evaluation required "is not so readily adapted to procedural due process safeguards as are decisions that turn on specific factual questions . . . ." (*People* v. *Ramirez, supra,* 25 Cal.3d 260, 273.) Nevertheless, notwithstanding the importance of the county's countervailing interests, a work furlough applicant retains important interests in "(1) being informed of the nature of and reasons for the proposed action [exclusion], (2) ensuring that the Director does not base his decision on erroneous or irrelevant facts, and (3) presenting his case for not being excluded." (*Id.,* at p. 274.)

Accordingly, we proceed to examine the procedure currently followed to determine the risk of an erroneous deprivation of the applicant's interests and the probable value of "additional or substitute procedural safeguards." The present procedure for determining an applicant's acceptability for work furlough is set forth in paragraph V, "Investigations," of the probation department adult manual adult handbook. All cases are assigned to an investigator and then routed through the clerical staff, whereupon pertinent information from the probation index is obtained for the investigator. When a case is active, the investigator contacts the field supervision deputy probation officer. Thereafter, the investigator schedules a personal interview with the applicant to collect "all relevant information relating to the applicant's employment or educational situation, social and financial circumstances, means of transportation, as well as his personal characteristics and attitudes."

The investigator then obtains a verbal agreement of cooperation from the applicant's employer or school and obtains and evaluates the applicant's record of prior offenses. When pertinent, the investigator may interview the applicant's spouse, relatives or other interested parties. Upon completion of the investigation, the investigator confers with the supervisor and the application is approved or rejected. Only then is the "applicant, the court or other person making the referral" informed of the decision.

The probation department work furlough manual intake criteria, subdivision A(4), "Screening for Exclusions," indicates: "The Sheriff *might* preclude a group or class of offenders or a specific offender as not suitable for placement in the minimum jail detention facility where the work furlough offenders are housed. These are offenders who have demonstrated behavior requiring a more structured setting. The arrest record and the present con-

viction is examined for sex offenses, *narcotic involvement* and patterns of violence or escape. The offender's personal behavior and attitudes must be compatible with the inmate population in a minimum security facility." (Italics added.)

Ms. Wong, the supervising deputy work furlough administrator, declared that the nature of a drug-related offense, the applicant's proposed employment and the attendant circumstances are the basic factors in determining denial of admission to the program, *not* the mere fact the offense is drug-related. C.A.I. Director Christine Reeves indicated in her letter of October 25, 1983 to petitioner's attorney that the applications "are evaluated on a case-by-case basis." Nevertheless, petitioner presented uncontradicted evidence that his attorney was told by work furlough personnel on two separate occasions, and in one instance by Ms. Wong, that petitioner was automatically excluded from the program due to the nature of his conviction.

In addition, the rapid chain of events which followed petitioner's failure to appear for his scheduled interview supports the inference that the work furlough administration attached little importance to the interview in light of the nature of petitioner's conviction. When petitioner arrived for the interview, one hour and fifteen minutes after the scheduled time, he was told his investigator was gone for the day (a Friday) and he should contact the investigator the following Monday morning. When he did so, petitioner was informed he had already been rejected for work furlough, but was assured the rejection resulted from the nature of his conviction rather than his failure to attend the interview.

The procedure outlined above and the manner in which it is implemented by the work furlough administration clearly present a grievous risk of erroneous exclusion due to an infectious bias perilously bordering on a policy of automatic exclusion. Moreover, the instant evidentiary record dramatizes the actual risk of an erroneous exclusion in this particular case.

Captain Biard expressed the jailors' concerns in this case as follows: ". . . the possibility exists that free access to his occupation would enable *this inmate to introduce narcotic contraband into this facility. It is also* probable that Dr. Thomas would be pressured and coerced by fellow inmates for special favors, once it became known that *he had access* to highly coveted drugs." Yet petitioner had information available for presentation to the work furlough administrators and the sheriff's jail administrators that he was no longer licensed to write narcotic prescriptions and would not be doing so and that he would not have access to or be permitted to dispense narcotics in the course of his employment.

While we cannot speculate on the actual outcome had this information been presented to the work furlough administration, it is reasonably possible that, had the facts been known, the administration would have altered its viewpoint or, at least, been prompted to pursue further investigation. The evil in the procedure presently utilized to evaluate an applicant for work furlough is that it provides no mechanism which would alert an applicant to the value of this information or provide a means for placing the information in the record.

Petitioner was not informed before the scheduled interview either of the criteria applied by the work furlough administration or that, in the administration's view, a potential ground for exclusion existed. At no time, either before the interview or after his rejection, was he informed of *why* the nature of his conviction might exclude him from the program. Of equal importance, petitioner was never invited to present additional witnesses or documents to address the administration's concerns. Moreover, it is clear that the additional safeguards of requiring advance notice to an applicant of a proposed rejection, the reason therefor, the specific concerns underlying the rationale for the rejection and of affording the applicant an opportunity to refute this reasoning—by the submission of the names of additional interviewees or letters or declarations containing the pertinent information—have considerable value in avoiding or at least decreasing the likelihood of an erroneous exclusion.

The imposition of additional procedural safeguards has the value not only of minimizing the possibility of an erroneous deprival but also of serving the vital dignity interest "in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official." (*People* v. *Ramirez, supra,* 25 Cal.3d at p. 269.)

Affording the applicant these benefits indicates clearly his continuing status as a valued member of the human community and avoids all appearance of arbitrariness or underhandedness. There are no countervailing factors, such as a danger from the attendant delay (see, e.g., *Inmates of Sybil Brand Institute for Women* v. *County of Los Angeles* (1982) 130 Cal.App.3d 89 [181 Cal.Rptr. 599]), which serve to diminish the importance of the dignity interest. Consequently, additional safeguards will give full value to the individual applicant "by treating him as an equal, fully participating and responsible member of society." (*Ramirez, supra,* at p. 267.)

Finally, the addition of these procedural requirements would not add significantly to the fiscal and administrative burden attending the work furlough program. These safeguards would entail only communicating to an applicant

a tentative decision, along with the reasons and the specific concerns prompting the decision, prior to affording him an opportunity at his interview to rebut the administration's rationale and then informing him of the specific reasons for any ultimate denial. To be sure, additional time and effort will be involved, but the complexity of review and decisionmaking should not increase. In our view, this minimal additional burden is justified to protect the important interests at stake. Hence, the additional procedural requirements would neither overburden the program nor interfere in the substantial government interest in having the program administrators utilize their discretion in making the necessarily subjective evaluation of a program applicant.

In sum, we hold, under the criteria set forth in *People* v. *Ramirez, supra,* 25 Cal.3d 260, petitioner was excluded from the work furlough program without receiving all the process that was due. Minimal procedural protection requires that he be provided with the additional procedures outlined above.

Our conclusion is strengthened by resort to the traditional procedural due process analysis applied in the analogous context of discretionary parole release applications. *In re Sturm* (1974) 11 Cal.3d 258 [113 Cal.Rptr. 361, 521 P.2d 97] recognized the validity of the distinction between parole revocation and discretionary parole release as follows: parole release concerns a mere expectancy or hope of freedom and, in addition, a decision to release on parole is an "attempt to predict by subjective analysis whether the inmate will be able to live in society without committing additional antisocial acts . . . ." (*Id.,* at p. 266.) Nonetheless, *Sturm* acknowledged a "limited cognizance of rights of parole applicants to be free from an arbitrary parole decision, to secure information necessary to prepare for interviews with the Authority, and to something more than mere pro forma consideration." (11 Cal.3d at p. 268.) Hence, *Sturm* found a due process right to a written statement of reasons for rejection of a parole application. (*Id.,* at p. 269.)

Earlier, in dicta, *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326] expressed "doubt" as to the Adult Authority's right to withhold relevant information from a prisoner who may suffer unjustifiably from the lack of knowledge (*id.,* at p. 475) and stated: "Unless the prisoner learns what information is in the Authority's possession he cannot intelligently decide what subjects to discuss at his . . . interview." (*Id.,* at p. 476.) The *Prewitt* dicta logically presage the right which *Sturm* recognized "to secure information necessary to prepare for interviews . . . ." (11 Cal.3d at p. 268.) Moreover, *Prewitt* unequivocally recognizes, notwithstanding the "mere expectancy" of parole release, a right to *some* procedural due process in that setting, including a reasonable opportunity to

respond to the factors relied on in reaching a decision. (8 Cal.3d at p. 475.) Accordingly, even under the traditional analysis, petitioner was entitled to receive advance notice of the factors specifically relied on in deciding to exclude him from the work furlough program and to respond, in some reasonable fashion, to those factors.

The writ is granted and petitioner is remanded to the superior court for further proceedings consistent with this opinion, in which the County of Los Angeles Probation Department, Work Furlough Administration, is directed to reconsider petitioner's application for admission to the work furlough program and to utilize the procedures set forth in this opinion to that end.

Lillie, J., and Dalsimer, J., concurred.