[No. D004650. Fourth Dist., Div. One. Dec. 18, 1986.]

In re ERIC NEAL STARR on Habeas Corpus.

**COUNSEL**

Utsinger & Williamson and Warren R. Williamson for Petitioner.

Edwin L. Miller, Jr., District Attorney, and Paul M. Morley, Deputy District Attorney, for Respondent.

**OPINION**

**WORK, J.**—Eric Neal Starr, by petition for a writ of habeas corpus, seeks conduct credits (Pen. Code,[1] § 4019) against time served in a private work furlough program as a condition of probation and also claims entitlement to immediate release if the credits are granted. We have released him from custody to prevent mootness of his claim pending our consideration of the petition. We determine he is entitled to section 4019 credits and issue the writ.

I

Convicted of soliciting arson (§ 653f), Starr was granted five years probation conditioned on one year local custody and a $5,000 fine. Starr began

---

[1]All statutory references are to the Penal Code unless otherwise specified.

serving his custodial time on September 20, 1985, at a county honor farm. On December 23, 1985, the superior court granted his request for modified probation to serve the balance of his custodial time at a privately owned and managed work furlough program (Western States Re-Entry Corporation). Starr requested that placement because, among other things, he could then operate his restaurant business and earn money to help finance his children's education and otherwise support his family.[2]

An officer of Western States Re-Entry Corporation wrote a letter to Starr's counsel indicating willingness to accept him, describing the program, and also saying, "Keep in mind that we do not compute PC 4019 credits;[3] therefore, a defendant must complete the time on a day-for-day basis. With this in mind, Mr. Starr would in effect receive a greater punitive sanction in our program that [*sic*] he would were he to remain incarcerated in the county system."

At the probation modification hearing on December 23, 1985, the probation officer stated Starr was then ineligible for a county work furlough program because that program was not accepting persons with more than 180 days of remaining custodial time[4] and Starr had 217 days left to serve. The court indicated it was inclined to send Starr to a work furlough program, perceiving its options were either to modify his sentence by reducing it to make him eligible for the county program or to permit him to enter the work furlough program at Western States Re-Entry. The court also said, comparing the two programs, ". . . the programs, while descriptive, don't seem to be much different."

The probation officer commented, ". . . there's also the *probability* that the Western States—that they don't earn the good time credit unless the court is going ask for it." (Italics added.)

The court permitted Starr to enter the Western States Re-Entry program. The probation officer asked, "Will he earn the good time for work credits at the Western States? That's an option of the court." The court responded, "He gets his credits for time served up until this time. From here on in, *as I understand it,* he receives no additional good time credits." (Italics added.)

---

[2]The benefits to a county from placing a prisoner on work furlough are discussed in *In re Thomas* (1984) 161 Cal.App.3d 721, 728 [206 Cal.Rptr. 719], including preventing families from becoming dependent on public support.

[3]The significance of this fact escapes us. Custody credits are statutory and not under the control of any private entity.

[4]We assume this "remaining time" condition is imposed for the convenience of the county since there is no such restriction in section 1208.

Neither Starr nor his attorney commented on the good time credits issue at this hearing. However, on May 15, 1986, after learning section 4019 credits were awarded to another person placed by the superior court in Western States' program, Starr filed an emergency motion in the superior court seeking conduct credits under section 4019, which the superior court heard and denied on June 2. The court said: "I was then influenced to allow him to go into Western States because he was ineligible for the county program, and because at that time part of the argument by defense lawyers to this court on behalf of Mr. Starr was to the effect, 'Well, look, Judge, he'll even do longer time because he won't get these credits.'[5] And because he had a medical problem and a business problem, I opted to let him go into this private program; and now today, because I did do that, I am asked to go one step further, and I'm not inclined to desire to do that."

At the time Starr petitioned for a writ of habeas corpus in this court (on June 3, 1986), he alleged about 55 days remained to be served before expiration of the full 1-year term of his local sentence. If he were entitled to section 4019 credits, he would have then been eligible for release. On June 9, 1986, this court ordered Starr's immediate release to prevent mootness of his claim pending our determination.

Starr claims he is entitled to the conduct credits as a matter of equal protection of the laws because such credits, according to an opinion of the Attorney General's office, are granted for participants working for private employers in county-sponsored, public work furlough programs (see 63 Ops.Cal.Atty.Gen. 33 (1980)), and private and public work furlough programs do not differ significantly.

While not conceding Starr's equal protection claim, the People do not argue this private program meaningfully differs from a county work furlough program justifying different treatment of participants in the two kinds of programs. In fact, the court found no difference between the programs. No argument is made that granting credits would disrupt the program.[6] The People oppose Starr's petition on the sole ground that he has waived his entitlement to conduct credits by accepting placement in the Western States' program under the possibility there would be no conduct credits.

## II

If there are dissimilarities between the work furlough program at Western States and the county work furlough scheme, they have not been shown.

---

[5]The reporter's transcript of the December 23, 1985, proceedings contains no such defense argument. If one was made on other occasions, it is not part of the record in this court.

[6]Indeed, the purpose of conduct credit incentives applies equally to participants in both private and public programs, i.e., behavorial motivations, instill a work ethic, etc. (see 63 Ops.Cal.Atty.Gen. 33 (1980)).

Each requires participants to pay for the custody care and supervision, $500 per month to Western States compared to $15 per day to the county facility. Each monitors inmates working for private employers and supervises their custody and performance while not working. In each, failure to perform satisfactorily results in exclusion from the program.

█ In sum, it appears there is no meaningful difference between the program at Western States and that of the county. Further, the social goals of section 1208 are achieved equally by both. The People do not suggest the Legislature intended to exclude qualified participants who are placed in private work furlough programs as an alternative to public programs which are unavailable solely because of local jail policy from receiving custody credits.

Section 1208, subdivision (a) permits the county to contract with nonprofit private agencies to perform exactly the services provided by Western States. Had it done so, Starr, if placed with such a nonprofit agency, would be entitled to custody credits by the express provision in section 1208, subdivision (f).

We believe the language of section 1208 and policy reasons for its enactment are sufficiently broad to encompass court-placed participants in Western States' program, thus making Starr eligible for conduct credits unless he has waived them.

### III

█ To be effective, a criminal defendant's waiver of constitutional or statutory rights must be voluntary, knowledgeable and explicit. (See, e.g., *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 301 [110 Cal.Rptr. 329, 515 P.2d 273]; *In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449]; *In re Sutherland* (1972) 6 Cal.3d 666, 671 [100 Cal.Rptr. 129, 493 P.2d 857]; *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019].) Here, the alleged waiver meets none of these conditions. There is no evidence Starr knew he had any right to credits. The record suggests his counsel, the probation officer and the sentencing judge were under the impression he had no such right. Starr and his attorney were told by Western States that credits were not available and accepted that drawback because even without credits the placement at Western States was the only presently available work furlough placement unless the court reduced the total length of his jail term, an option the court appeared willing to choose if Western States was not available.

The People also suggest the sentencing judge agreed to the Western States' placement only because Starr would serve a longer term there than if his

term was reduced to permit county work furlough. That inference is not supported by the record. In fact, the record shows only Starr's probation officer used the credits issue by stating there was a "probability" Starr would not get credits because he believed this to be *optional* with the court. Starr never raised or spoke to the issue of credits nor did the court ask him to give up any rights to them.

Let a writ of habeas corpus issue as prayed releasing petitioner from further custody in this matter.

Wiener, Acting P. J., and Butler, J., concurred.