Filed 7/9/14  P. v. Hernandez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICARDO HERNANDEZ,<br><br>    Defendant and Appellant. | B247606<br><br>(Los Angeles County<br>Super. Ct. No. VA093208) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Peter P. Espinoza, Judge.  Affirmed.

Maria Leftwich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Ricardo Hernandez, appeals from the revocation of probation and imposition of a three-year prison term arising from his guilty plea to receiving stolen property and possessing burglar's tools (Pen. Code, §§ 496, 466).[1]

The judgment is affirmed.

## BACKGROUND

On December 31, 2005, defendant Hernandez and a companion were sitting in a van when they were contacted by a police officer. The companion was arrested on an outstanding warrant and the van was searched. The victim's checkbook was found between the driver's seat and the passenger seat. Shaved car keys, commonly used for stealing cars, were found in the companion's purse. The companion told police Hernandez had handed her the keys when the patrol car pulled up behind them.

After Hernandez pled guilty to receiving stolen property and possessing burglar's tools, the trial court imposed and then suspended execution of a three-year prison sentence and placed Hernandez on probation for three years. Hernandez subsequently violated probation a number of times. On July 22, 2008, he was convicted of grand theft after a DHL driver refused to complete a delivery of some cell phones and Hernandez forcibly took the packages from the driver. This conviction led to the revocation of probation on February 19, 2009, after which probation was reinstated. There were three more probation violations: on September 17, 2010, for a driving under the influence of drugs conviction; on August 10, 2012, for testing positive for methamphetamine; and, on February 22, 2013, for being found in possession of apparently stolen property.

Following the last of these probation violations, the trial court revoked probation and executed the original three-year prison sentence.

---

[1] All further references are to the Penal Code unless otherwise specified.

2

## CONTENTS

1. The trial court had no power to impose the three-year prison sentence because Hernandez's probationary period had already terminated as a matter of law.

2. Hernandez was entitled to serve his prison sentence in county jail under the Realignment Act.

## DISCUSSION

1. *Trial court did not lack jurisdiction to impose a prison term.*

Hernandez contends his prison term is invalid because his term of probation had been extended beyond the statutory maximum of five years and, therefore, it expired before it could be revoked. This claim is meritless.

a. *Background.*

At Hernandez's probation revocation hearing on February 19, 2009, the probation department recommended reinstating probation, extending it for one year, and ordering Hernandez to attend a theft prevention class. When the prosecutor asked for the suspended three-year prison term to be imposed, the trial court said:

"And that's really one of my only two choices is to continue on probation or impose the time. I don't have the discretion when it's execution suspended . . . to pick a different and shorter time. I can just continue on probation and/or impose the time that I stayed back at the time of the sentencing, which was March 9th of 2006. [¶] When I see execution suspended, there's usually a reason. So, I had to look through the file to see what the reason was. The reason was he was already on misdemeanor probation for identity theft out of Whittier at the time. . . . I imposed [the] high term because I felt at the time we're dealing with someone that's doing a lot of stealing of people's identities, checkbooks. Now, here, the interesting thing is you've got some cell phones in packages that look like were admittedly shipped to him to other people [*sic*] in different names. So it was his stuff, but he basically forcibly takes them from the DHL driver because the DHL driver doesn't want to give them to him. It's a strange set of facts. [¶] My inclination is, with an admission of violation, I would not be following the probation officer's recommendation, which was . . . [to] extend probation for a year. . . . I have

3

discretion to institute a probationary period equal to that which I originally imposed. That's what I would do. He's on probation to me another 3 years on admission of violation . . . ."

After some discussion about the availability of theft prevention classes, the trial court said:

"He'll now have 3 years to get [the restitution] paid. If I see him again, he's going for the full 3 years, no questions asked. So, if you want to talk to your client –

"[Defense counsel]: I have, Your Honor, and he is willing to accept.

"The Court: My clerk informs me that there is such a thing. So, the theft classes would be an additional condition of probation if he's willing to accept those terms.

"[Defense counsel]: Defendant is agreeable to those terms, Your Honor.

"The Court: All right. And before I do this, I would guess this is over the People's objection. If you have anything you wish to add, I'd be happy to hear it.

"[The prosecutor]: Only that I'm not sure of the court's summary of the facts. I don't believe those [cell phones] were his property. I think he was part of a scheme to have those delivered at the addresses and then to take them. The way I heard the court state the facts was he was taking his own property, but this was a scheme to – they were to other people.

"The Court: It's a strange set of facts. And my concern is he's once again engaging in some type of scam and theft-related offense, which is why I suspended the time last time. . . . I'll continue it, but it will be a new 3-year period, additional terms and conditions. He's going to have to live with the probation officer the whole time and he better not see me again.

"[Defense counsel]: That will be 3 years beginning today; correct?

"The Court: Beginning today.

"[Defense counsel]: Is that agreeable?

"The defendant: Yes."

4

b. *Discussion.*

"[O]ur statutes . . . authorize the courts to grant probation for a period not to exceed a specified time, three years in the case of misdemeanors, with certain exceptions (§ 1203a), or five years or the maximum possible term of sentence, whichever is longer, in the case of felonies, with certain exceptions (§ 1203.1)." (*People v. Leiva* (2013) 56 Cal.4th 498, 509.) Hernandez was convicted of a misdemeanor (§ 466) and a felony (§ 496).

Hernandez argues the trial court violated this statutory five-year limitation because the three-year probationary term starting on February 19, 2009, extended his probation well beyond the maximum period, which ended on April 24, 2011. Hernandez is wrong. Because he consented to the new probationary term as a way of avoiding prison, Hernandez is now estopped from complaining the probationary term was unlawful.

In *In re Griffin* (1967) 67 Cal.2d 343, a probation revocation hearing was continued, without objection by either party, to a date after the probationary term would expire. Griffin subsequently challenged the trial court's revocation of his probation at the continued hearing on the ground the court had lost jurisdiction before issuing the revocation order. This claim failed: "Petitioner contends that because timely revocation of probation is 'jurisdictional' the rule that jurisdiction cannot be conferred by estoppel applies. That rule relates to subject matter jurisdiction, the court's power to hear and determine the cause. [Citations.] [¶] The jurisdictional concept involved in the cases holding that the court is without power to revoke probation after the end of the probationary term is not lack of jurisdiction of the cause but excess of jurisdiction. [Citations.] Neither the probation statutes nor the cases applying them support a holding that expiration of the probationary period terminates the court's jurisdiction of the subject matter. The statutes themselves contemplate that such fundamental jurisdiction continues, for they provide for the court's determination of certain matters after the end of the probationary term." (*Id.* at pp. 346-347.)

*Griffin* went on to explain: "*When . . . the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction.* [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when 'To hold otherwise would permit the parties to trifle with the courts.' [Citation.]" (*In re Griffin, supra,* 67 Cal.2d at pp. 347-348, italics added.)

The rule of *Griffin* has been followed in probation and other contexts. (See *People v. Jackson* (2005) 134 Cal.App.4th 929, 932-933 [*Griffin* estoppel applied because trial court had subject matter jurisdiction and could impose probationary term exceeding statutory maximum at defendant's request]; *People v. Hester* (2000) 22 Cal.4th 290, 294-295 [*Griffin* estoppel applied where defendant agreed to plea bargain that failed to stay concurrent term in violation of multiple punishment statute (§ 654); defendant in effect waived right to raise § 654 issue on appeal]; *People v. Collins* (1996) 45 Cal.App.4th 849, 864-865 [*Griffin* estoppel applied where trial court granted People's motion to vacate defendant's CYA sentence for violating plea agreement because, even if trial court lacked jurisdiction to reconsider the sentence, defendant had agreed juvenile commitment was conditioned on his compliance with plea terms].)

Hernandez's argument the trial court had no "authority" to extend his probationary period beyond the statutory maximum thus misses the point. As *Jackson* explained: "There can be no doubt that the trial court possessed and retained subject matter jurisdiction over appellant when it made its erroneous ruling. The court's attempt to extend appellant's probation was merely an act in excess of its jurisdiction." (*People v. Jackson, supra,* 134 Cal.App.4th at p. 933.)

6

Hernandez claims he did not knowingly waive his statutory right to a five-year maximum probationary term, but waiver and estoppel are not the same thing. " 'Although waiver and equitable estoppel[2] are not always distinguished in the cases, they rest upon different legal principles. There may be an equitable estoppel where there is no waiver in the technical sense. Waiver is a voluntary relinquishment, expressly or impliedly, of a known right and depends upon the intention of one party only. Equitable estoppel is based upon the fundamental principle that "one's conduct has induced another to take such a position that he will be injured if the first party is permitted to repudiate his acts." [Citation.]' " (*Elliano v. Assurance Co. of America* (1970) 3 Cal.App.3d 446, 450-451.) "Estoppel does not require a voluntary relinquishment of a known right . . . . [Citation.]" (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 163.)[3]

When Hernandez appeared for the probation revocation hearing on February 19, 2009, he was facing jail time. The record is very clear the trial court was either going to execute the suspended three-year prison sentence or impose a new three-year probationary term. Hernandez and his attorney readily agreed to the extension of probation. In this situation, it is appropriate to apply the estoppel principle to prevent Hernandez from gaming the judicial system.

---

[2]  " 'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]' [Citations.] [¶] Equitable estoppel 'will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy. [Citation.]' " (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279.)

[3]  Hence, Hernandez's reliance on *In re Starr* (1986) 187 Cal.App.3d 1550, is misplaced. That case only involved the validity of a prisoner's purported *waiver* of entitlement to conduct credits. The case does not mention estoppel.

7

We hold Hernandez is estopped from claiming the trial court had no authority to extend his probationary period for three years on February 19, 2009.

2. *Realignment sentencing.*

Hernandez contends he was entitled to serve his sentence in county jail, rather than state prison, pursuant to the Criminal Justice Realignment Act of 2011. This claim is meritless.

Hernandez relies on *People v. Clytus* (2012) 209 Cal.App.4th 1001, which "conclude[d] that a trial court executing a suspended sentence for a probation violation on and after October 1, 2011, the effective date of the Realignment Act, has no discretion to send to prison a defendant who qualifies under the Act to serve the sentence in county jail." (*Id*. at p. 1004.) However, our Supreme Court has just disapproved *Clytus* in *People v. Scott* (2014) 58 Cal.4th 1415: "We conclude that the Realignment Act is not applicable to defendants whose state prison sentences were imposed and suspended prior to October 1, 2011. Upon revocation and termination of such a defendant's probation, the trial court ordering execution of the previously imposed sentence must order the sentence to be served in state prison according to the terms of the original sentence, even if the defendant otherwise qualifies for incarceration in county jail under the terms of the Realignment Act." (*Id*. at p. 1419.) *Scott* reasoned: "[T]he statutory provisions and case law existing at the time of the Legislature's enactment of section 1170(h)(6) in 2011 established that a defendant is 'sentenced' when a judgment imposing punishment is pronounced even if execution of the sentence is then suspended. A defendant is not sentenced again when the trial court lifts the suspension of the sentence and orders the previously imposed sentence to be executed." (*Id*. at p. 1423.)

The trial court did not err by committing Hernandez to state prison.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.