[Crim. No. 16128. In Bank. Dec. 14, 1972.]

In re ROBIN LIN PREWITT on Habeas Corpus.

## COUNSEL

Richard H. Levin, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, Doris H. Maier, Assistant Attorney General, Arnold O. Overoye, Nelson P. Kempsky, Jack R. Winkler and William R. Pounders, Deputy Attorneys General, for Respondent.

## OPINION

**WRIGHT, C. J.**—We issued an order to show cause in response to an application by Robin Lin Prewitt for a writ of habeas corpus wherein he complains that an Adult Authority (Authority) order improperly re-

scinded a prior grant of parole, fixed his term at maximum and provided that the Authority would not consider future applications for fixing his term at less than maximum or for granting parole. Since filing his petition he has further complained of a denial of procedural due process protections claimed to have been afforded pursuant to *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], filed by the Supreme Court after the filing of the petition herein.

In the case of *In re Minnis* (1972) 7 Cal.3d 639 [102 Cal.Rptr. 749, 498 P.2d 997], we held that periodic reconsideration of Authority orders which deny parole or refuse to fix a term at less than maximum is essential to achieve the purposes of the Indeterminate Sentence Law and the parole system (see Pen. Code, §§ 1168, 1168a, 3020), and that failure to afford such review constitutes an abuse of discretion.[1] (*Id.* at pp. 645-647.) For reasons which hereinafter appear, petitioner is entitled only to that relief afforded by *Minnis.*

In 1969 petitioner pleaded guilty to violations of section 12220 (possession of a machine gun) and Health and Safety Code section 11910 (possession of a restricted dangerous drug). On May 9, 1969, he was sentenced to serve a term of six months to five years on the charge involving the possession of the machine gun for which he is currently incarcerated at Folsom Prison.[2] He has one prior felony conviction.

On December 9, 1970, the Authority fixed petitioner's term at the maximum of five years, "[g]ranted parole effective May 17, 1971," and transferred him to a forestry camp pending release on parole. However, at a meeting of its executive committee which was held on April 20, 1971, the Authority rescinded its "action of 12-9-70 fixing term and granting parole." It again fixed petitioner's term at the maximum of five years, denied parole and declared that petitioner would receive "[n]o further parole consideration."[3] The People concede that the Authority's action was predicated upon information contained in confidential statements sub-

---

[1]Hereinafter, unless otherwise indicated, all section references are to the Penal Code.

[2]Petitioner was also sentenced to serve a term of one year in the county jail for the violation of Health and Safety Code section 11910. He is no longer in custody pursuant to that conviction.

[3]The quoted language appears in certifications of Authority action taken on the dates in question, copies of which certifications are submitted as exhibits with the return of the order to show cause. Language which hereinafter refers to a rescission of "parole" is intended to relate to either or both a rescission of the date set for parole and the parole itself.

mitted by law enforcement agencies which had investigated petitioner's case.[4]

Section 3022 provides that "At least 30 days before the Adult Authority shall meet to fix and determine the length of time any prisoner shall be confined, the authority shall send written notice thereof to each of the following persons who has made request therefor: the judge of the superior court before whom the prisoner was tried and convicted, the attorney for the defendant and the district attorney of the county from which the prisoner was sentenced and the law enforcement agency that investigated the case." Section 3042 makes a similar provision for notice to the foregoing parties and the Director of Corrections prior to the Authority's consideration of a prisoner's parole. The apparent purpose of notifying the designated parties is to invite them to submit their views as to the appropriate length of term and the advisability of parole.

Petitioner contends that he is entitled to confront and cross-examine the author of any submitted statement and the persons whose views are referred to or relied upon in that statement. He argues that by rescinding his parole date and redetermining his term without allowing him "to confront and cross-examine the witnesses against him" the Authority violated his right to procedural due process.

We deal first with the question whether an inmate prior to a rescission of parole is entitled to due process protections and, if so, what specific procedural processes are due. We deem that this inquiry, in significant aspects, has heretofore been resolved in favor of petitioner's claims. (See *Morrissey* v. *Brewer, supra,* 408 U.S. 471.) *Morrissey* holds that proceedings for parole revocation must conform to minimum due process requirements, including, inter alia, the protections sought by petitioner in the instant case.[5] (See *People* v. *Vickers, ante,* p. 451 [105 Cal.Rptr.

---

[4]An affidavit filed by the Director of the Adult Authority summarizes the content of the statements as follows: "Prewitt had been engaged in a number of burglaries in the San Mateo area; . . . a crime partner of Prewitt's stated . . . that he, Prewitt and two others had burglarized six hundred pounds of methamphetamine . . . while one of the men was on the roof of a building across the street with a rifle to shoot any police who came upon the scene; . . . Prewitt was a major supplier of illegal drugs in the San Mateo area; and . . . Prewitt had made a contract to have a policewoman undercover narcotics agent killed . . . and had furnished the gun to the potential assassin." When a correctional officer informally discussed the substance of the allegations with petitioner, petitioner denied knowledge of the alleged contract and disclaimed involvement in the other matters. Petitioner was never interviewed by any member or representative of the Authority.

[5]*Morrissey* provides for a two-stage proceeding, the first being in the nature of a " 'preliminary hearing' to determine whether there is probable cause or reasonable

305, 503 P.2d 1313].) Although the proceedings of which petitioner complains were not for revocation of parole but for rescission of an unexecuted grant of parole, we can perceive no significant distinction between the deprivation of the right to conditional liberty enjoyed by a parolee after release and the deprivation of the right to achieve such liberty after a grant thereof but before the date fixed for release. In either event the parolee has been deprived of a valuable if limited right to be free (see *Morrissey* v. *Brewer, supra,* 408 U.S. at p. 482 [33 L.Ed.2d at pp. 494-495]; *People* v. *Vickers, supra, ante,* p. 451), and the same or substantially the same protection must be accorded him in effecting that deprivation. ▮ An inmate, accordingly, is entitled to a hearing which substantially conforms to the *Morrissey* procedures on the question whether an order granting parole should be rescinded as improvidently granted.[6]

Petitioner in the instant case has expressed particular concern because the information on which the Authority relied in rescinding its earlier order was submitted in the form of statements made following notice given pursuant to sections 3022 and 3042 without affording him an opportunity to respond thereto. The *Morrissey* procedures specifically provide for the protection petitioner demands (see fn. 5, *supra*) in a proceeding wherein *Morrissey* is applicable. However, the protection is expressly limited. In describing the nature of a parolee's right to a disclosure of adverse information at the preliminary hearing, the Supreme Court stated that "if the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination." (408 U.S. at p. 487 [33 L.Ed.2d at p. 498].) Such limitation on the right of disclosure is also applicable at the more

grounds to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." (408 U.S. at p. 485 [33 L.Ed.2d at p. 497].)

A second, more formal hearing at which the question of violation is factually determined must include the following procedural protections: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (*Id.* at p. 489 [33 L.Ed.2d at p. 499].)

[6]We note that, as petitioner in the instant case had not been actually released on parole and thus was continually in lawful custody prior to the order rescinding the grant of parole, the preliminary hearing which *Morrissey* provides for in the case of parole revocations would not be compelled here by due process considerations.

formal hearing as to information submitted either by witnesses or by written statements in accordance with sections 3022 and 3042. (*Id.* at pp. 487, 489 [33 L.Ed.2d at pp. 497-498, 499].) As the right of nondisclosure is necessary to protect only the informer, it is only his identity and not that of the reporting official or agency which may be withheld.

Although for purposes of applying *Morrissey* we do not distinguish between a revocation and a rescission of a grant of parole, it is not our intent and we do not hold that the *Morrissey* procedures are applicable to proceedings by the Authority for fixing the terms of and granting paroles to prison inmates. We are nevertheless constrained to remark, although the issue is not now before us, that certain proceedings in connection with the fixing of terms and granting of paroles may not now conform to due process requirements. ■ When determining whether a procedure involved in the term-fixing or parole-granting process violates due process, "the reviewing court must consider the objectives sought to be achieved by the challenged procedure, the possible unfairness to the prisoner, and the availability of alternative procedures which are less burdensome to the prisoner." (*In re Minnis, supra,* 7 Cal.3d 639, 649.) While the Authority's right to receive relevant information from the notified parties, including the investigating agencies, is beyond question (*id.* at p. 650; cf. *Williams* v. *New York* (1949) 337 U.S. 241, 245-247 [93 L.Ed. 1337, 1341-1342, 69 S.Ct. 1079]), doubt remains as to that body's right to keep such information secret from the prisoner who may suffer unjustifiably if inaccurate statements are relied upon by the Authority in making its determination.

The People have urged that disclosure of these statements will endanger the sources of information and that, consequently, potential informants will be discouraged from confiding in the Authority so as to deprive it of information essential to the performance of its functions. Except where, as noted in *Morrissey,* a disclosure will impose a risk of harm to some informant, the People's argument overstates the importance of confidentiality to the achievement of the governmental objectives involved. The Legislature has otherwise provided for the submission immediately after pronouncement of judgment of similar statements from most of the same parties or agencies who receive notice pursuant to sections 3022 and 3042. (See § 1203.01; *In re Minnis, supra,* 7 Cal.3d 639, 650.) Copies of such statements at that time *must* be disclosed to the prisoner and his attorney, and there is nothing in the record which suggests that such disclosure requirements have seriously impeded the flow of information to the Authority.

From the inmate's point of view a policy of nondisclosure increases

the potential for unfairness. Unless the prisoner learns what information is in the Authority's possession he cannot intelligently decide what subjects to discuss at his predisposition interview. (See § 5077.) Especially with respect to statements containing information which may be inaccurate and was not presented at trial—either because the information was not sufficiently trustworthy, was not legally admissible or had not been obtained at that time—the inmate may have no knowledge of even the fact of the lodging of false or inaccurate charges. In such a situation a refusal to apprise him of the source and nature of the information would effectively deny all reasonable opportunity to respond. " '[T]he stakes are simply too high . . . and the possibility for honest error or irritable misjudgment too great, to allow' " submission of such potentially damaging remarks without at least an opportunity to challenge them. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 266 [25 L.Ed.2d 287, 298, 90 S.Ct. 1011].) ■ At a minimum, and subject to limitation only when an informant will be exposed to an undue risk of harm, an inmate should be provided with a copy of any document submitted pursuant to sections 3022 and 3042, and should be afforded a reasonable opportunity to respond thereto, either in person or in writing. Nothing less will satisfy standards of fundamental fairness required by the due process clause.

The People argue that the documents submitted in the case of an inmate's parole and term-fixing disposition should not be made available to him for the reason that such documents are submitted to the Department of Corrections in reliance on a promise of confidentiality. The People cite *City & County of S. F.* v. *Superior Court* (1951) 38 Cal.2d 156 [238 P.2d 581] and similar cases where such a promise was held sufficient to justify continued confidentiality. Those cases do not support the People's argument. In the *City & County of S. F.* case we carefully limited our holding by stating: "The courts generally have concluded that the public interest in preserving confidential information outweighs in importance the interest of a private litigant *in the absence of considerations involving life or liberty.*" (At p. 163; italics added.) ■ It is clear that in cases of term-fixing and parole-granting the private interest of an inmate in his liberty outweighs the public interest in preserving confidentiality. A claim that information is disclosed in confidence cannot be made, of course, when the duty to disclose is compelled by law.

We have concluded that with the exception of the preliminary hearing the requirements of *Morrissey* are applicable in parole rescission proceedings and that the rescission in the instant case did not conform to the mandates of *Morrissey.* ■ Such requirements, however, are to be made applicable only to revocations of parole occurring after June 29,

1972, and, we now hold, to rescission of parole grants after that date. As the rescission complained of here predated *Morrissey* by more than 14 months, that case affords petitioner no relief. (See *People* v. *Vickers, supra, ante,* p. 451; *People* v. *Nelson, ante,* p. 463 [105 Cal.Rptr. 314, 503 P.2d 1322].)[7]

As above stated, we have held in the case of *In re Minnis, supra,* 7 Cal.3d 639, that the Authority is compelled to afford periodic reconsiderations of its orders which deny parole or refuse to fix a term at less than maximum. Although it appears that petitioner was entitled to relief for the failure of the Authority to so reconsider such orders made in his case, the Attorney General states in the return to the order to show cause that the Authority, in recognition of its conceded failure to have followed its own policies in fixing parole in the instant case, placed the matter of petitioner's parole on its first calendar at which it could be given a full hearing, that a hearing was had on May 10, 1972, and that an en banc review was scheduled on June 19, 1972, the results of which have not been disclosed. The Attorney General also asserts that by order dated May 19, 1972, the Authority has abandoned its policy of refusing to reconsider particular cases, and now reviews annually all cases including those wherein terms have been fixed at maximum. Petitioner does not factually dispute these matters in documents filed by him since the foregoing assertions.

It appears in view of the foregoing that petitioner has already been afforded all relief to which he may have been entitled in accordance with *Minnis.* We have no cause to assume that he will not continue to be accorded periodic review in connection with the fixing of his term and his right to parole, and we anticipate that the Authority will provide petitioner with copies of statements submitted by individuals and agencies pursuant to sections 3022 and 3042, or otherwise, which are retained by

---

[7]The *Morrissey* procedures require that a parolee or, as in this case a prisoner whose grant of parole has been rescinded, be afforded an opportunity to confront and cross-examine witnesses against him. We may presume that in the case of a rescission of a grant of parole the action is generally taken because of events occurring within the prison community and the witnesses to such events would be subject to the Authority's control and could be compelled to appear. Where the Authority lacks control over a necessary witness it does not appear that it can itself compel attendance. (Cf. §§ 5068-5082.) The Authority's problem in producing witnesses may be even more pronounced in the case of parole revocations where the events upon which the revocation is sought generally occur outside the prison community. *Morrissey* nevertheless requires that those witnesses upon whom the Authority relies must be available at the hearing, except where the hearing officer specifically finds good cause for not permitting confrontation. The lack of procedural or administrative tools which make it difficult to produce a material witness otherwise available cannot be urged as an excuse for denying the right to cross-examination and confrontation when that right has been accorded on due process grounds enunciated in *Morrissey.*

the Authority in petitioner's file. Such copies must be timely submitted to petitioner in order to afford him a fair opportunity to respond to the statements prior to any scheduled hearing date, but need not disclose to petitioner the identity of any informant if, in the sound discretion of the Authority, such disclosure would subject an informant to an undue risk of harm.

Inasmuch as the record does not establish that petitioner is entitled to release at this time, the order to show cause is discharged and the petition denied.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied January 24, 1973.