**Charles A. WINTERS, Petitioner and Appellant,**

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary, Respondent and Appellee.**

**No. 16412.**

Supreme Court of South Dakota.

Considered on Briefs May 24, 1989.

Decided Aug. 23, 1989.

James A. Eirinberg of Carlsen, Carter, Hoy, & Eirinberg, Sioux Falls, for petitioner and appellant.

Roger A. Tellinghuisen, Atty. Gen., Pierre, for respondent and appellee; John W. Bastian, Deputy Atty. Gen. Pierre, on brief.

MILLER, Justice.

In this appeal, we hold that a convicted person has no protected liberty interest in parole and that he is not entitled to a due process hearing prior to rescission of an unexecuted parole.

### FACTS

Petitioner and appellant Charles A. Winters appeals the circuit court's denial of his amended petition for habeas corpus. Winters claims that the court erred when it

held that he had no liberty interest in his release once his parole had been granted by the South Dakota Board of Pardons and Paroles (Board) and that the court erred in holding that he was not entitled to any due process prior to a summary rescission of his grant of parole by Board.

In September 1986, Winters was convicted of the crime of sexual contact with a child under sixteen years of age. He was sentenced to ten years in the South Dakota State Penitentiary with four years of his sentence suspended. Winters later applied for parole and his application was heard by Board in March 1988. On March 24, Winters was granted parole on the condition that he relocate to Kentucky. He was not immediately released, however, because his parole was subject to approval by Kentucky authorities, pursuant to the Compact on Interstate Parolee Supervision. *See* SDCL 24–16–1 to 24–16–5. One week after his parole was approved, but while still in custody, Winters was expelled from the sex offenders' therapy group at the Human Services Center's trustee unit due to his lack of interest and lack of participation. It was also reported that he had told a prison employee that he was not guilty of the crime of which he was convicted, that he planned to engage in sexual contact with a child once he was released and that he saw nothing wrong in planning to do so. He also told an institutional parole agent that, unlike other inmates, he did not have an urge to go drink, but rather had an urge to go to a "peep show."

In April, prior to receiving approval from the Kentucky authorities, Winters was called back before Board to reassess the granting of his parole. At the meeting, Winters was not allowed to cross-examine or confront the witnesses against him nor was he allowed to call any witnesses on his behalf. He was not given the opportunity to present any documentary evidence and his request to retain counsel or have counsel appointed was denied.

Board specifically determined that Winters' rehabilitation had been misrepresented and that his parole had been improvidently granted because he expressed a willingness and desire to reoffend upon his release and because he displayed an attitude inconsistent with the goals of parole. Board further found that society would not be protected if Winters was released. Board concluded as a matter of law that Winters had no greater right to an unexecuted grant of parole than he had to release on parole generally, and that it had the same discretion to rescind an unexecuted grant of parole as it would to deny a parole application. Finally, Board noted that an unexecuted grant of parole does not vest a prisoner with any protected liberty interest and that unlike a revocation of parole, parole rescission does not require a due process hearing. Board then found that Winters' parole was unexecuted and determined that his parole should be rescinded.

Winters petitioned the circuit court for a writ of habeas corpus. The court issued the writ and a hearing was held. The circuit court denied Winters' habeas corpus relief, holding that he did not have a liberty interest in parole and that the rescission of parole without a hearing did not violate his right to due process. Winters appeals. We affirm.

## DECISION

### I

WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT WINTERS HAD NO LIBERTY INTEREST IN HIS UNEXECUTED GRANT OF PAROLE.

■ Winters first claims that the circuit court erred when it determined that he did not have a liberty interest in his unexecuted grant of parole. SDCL 24–15–1.1 provides:

Parole is the *discretionary conditional release of an inmate from actual penitentiary custody* before the expiration of his term of imprisonment. The prisoner remains an inmate under the legal custody of the department of charities and corrections until the expiration of his term of imprisonment. A prisoner is not required to accept a conditional

parole. *A prisoner is never entitled to parole.* However, parole may be granted if in the judgment of the board of pardons and paroles granting a parole would be the best interests of society and the prisoner.

*Neither this section nor its application may be the basis for establishing a constitutionally protected liberty, property or due process interest in any prisoner.* (Emphasis added.)

It is clear from the statute that a prisoner is paroled when he is actually released from penitentiary custody before the expiration of his term of imprisonment. That term does not apply to the waiting period between the grant and the execution of parole. It also would not apply here, where Winters' release on parole was explicitly conditioned on his acceptance by parole authorities in Kentucky.

■ The United States Supreme Court has specifically held that a convicted person has no constitutional or inherent right to parole. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).* In the case of *Dace v. Mickelson,* 816 F.2d 1277 (8th Cir.1987), the court in examining our parole statutes and analyzing the *Greenholtz* holding, specifically held that in South Dakota a convicted prisoner has no protected liberty interest in parole. We agree and adopt their holding and rationale.

## II

WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT WINTERS WAS NOT ENTITLED TO A DUE PROCESS HEARING PRIOR TO THE RESCISSION OF HIS GRANT OF PAROLE.

■ Winters next contends that the circuit court erred when it determined that he was not entitled to a due process hearing prior to the rescission of his grant of pa-

role. We disagree. The United States Supreme Court has clearly held that even though a prisoner has been notified that he is to be paroled, such expectation is not a protected liberty interest which requires a due process hearing prior to its rescission. *Jago v. Van Curen,* 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981).

In *Jago,* a penitentiary inmate was interviewed by the Ohio Adult Parole Authority (OAPA) to determine his fitness for parole under Ohio's "shock parole" statute. An OAPA panel recommended that the inmate be paroled and the inmate was so notified. He attended and completed prison pre-release classes and had even been measured for civilian clothes. Six days after the panel's interview with the inmate, OAPA was notified that the inmate had not been truthful in his interview concerning the gravity of the offenses he had committed or in his parole plan. As a result, OAPA rescinded its earlier decision to grant the inmate parole and continued his case to a later OAPA meeting, at which time his parole was formally denied. At no time was the inmate granted the opportunity to explain the statements he had made in his initial parole interview or in his parole plan.

The inmate ultimately filed a petition for writ of habeas corpus claiming that the rescission without a hearing violated his due process rights under the United States Constitution. The district court denied the writ. After that decision was remanded by the United States Supreme Court, the district court determined that no due process hearing was necessary because early release in Ohio was a matter of grace, that its law was unambiguous, and that no protectible interest in early release arises until actual release. The United States Supreme Court affirmed, holding that parole for Ohio prisoners lied wholly within OAPA's discretion, and that Ohio's parole statutes did not create a protected liberty interest for due process purposes.

---

* The *Greenholtz* court did, however, provide that a statute which instills an expectancy of release may create a liberty interest in parole. We note that certain legislation regarding parole, SDCL

24–15–1.1 and 24–15–8, specifically disclaims any intent to create a protected liberty, property or due process interest in any prisoner. These provisions respond to the *Greenholtz* caveat.

Following the rationale set forth in *Jago*, and reviewing our unambiguous statutes, we likewise believe that early release under our law is a matter of grace and that SDCL 24–15–1.1 gives Board the right to rescind an unexecuted grant of parole without the necessity of a due process hearing.

Affirmed.

WUEST, C.J., and MORGAN, J., concur.

SABERS, J., specially concurs.

HENDERSON, J., dissents.

SABERS, Justice (specially concurring).

Although I agree with the dissent's position that courts, not legislatures, determine constitutionality, the legislature does determine "parole." Under SDCL 24–15–1.1, parole is defined as "the discretionary conditional *release* of an inmate *from actual penitentiary custody* before the expiration of his term of imprisonment." (emphasis added). The emphasized language makes it clear that parole does not occur until actual release from penitentiary custody. Defining parole as "release" *is* a proper legislative function. Pursuant to Article XIV, sections 1 and 2 of the South Dakota Constitution, the state penitentiary is governed by such rules as the legislature shall provide, and an inmate, when incarcerated, "is under the exclusive control and custody of the penitentiary." *State v. Huftile,* 367 N.W.2d 193, 196 (S.D.1985). Therefore, Winters was not granted "parole," but was still in the process of applying and the process could properly produce a negative determination without a hearing.

HENDERSON, Justice (dissenting).

We do not have before us an instance of a prisoner claiming he is entitled to parole. Having been granted parole, the prisoner is claiming that he is entitled to a hearing, because of its rescission.

SDCL 24–15–1.1 is a state law, cited by the majority. Said statute expresses that an *application for parole* cannot establish a constitutionally protected liberty, property or due process interest. Parole is grace bestowed upon a prisoner because of his good conduct. Statutes should not try to express what is and what is not constitutional. *See, Vellinga v. Vellinga,* 442 N.W.2d 472, 475–77 (S.D.1989) (Henderson, J., dissenting), for dissertation on constitutional powers of the respective branches and historical background thereof. Therefore, the last paragraph of the statute is in absolute violation of Art. II of the South Dakota Constitution which prescribes DIVISION OF THE POWERS OF GOVERNMENT; said last paragraph also violates Art. V, § 1 and § 5 of the South Dakota Constitution. Only the courts can say what is and what is not constitutional. The legislature cannot. Our state legislature has a penchant for assuming the role of the courts of this state and has sought, in the past, to nullify this Court's powers. My most recent expression on this ideological phenomenon may be found in *Finck v. City of Tea,* 443 N.W.2d 632, 636–637 (S.D.1989) (Henderson, J., specially concurring).

But SDCL 24–15–1.1 is simply not applicable for another reason. Winters is not using the Great Writ of Liberty to obtain parole. He is screaming to the high heavens that he was granted parole and that it was then taken away from him without due process, to wit: No right to cross-examine witnesses; no right to call witnesses on his behalf; no right to present documentary evidence; and no right to be represented by counsel.[1]

Essentially, we face a broader issue than the majority would have us believe. We have before us this issue: As an incarcerated prisoner, has he been deprived of basic constitutional rights, having been granted parole and deprived of the aforementioned rights? I would hold that he has. *Satter*

---

1. Institution Parole Agent Timothy Cortan filed a report with the Parole Board; he was permitted to testify, also, before the Board; Winters was never permitted to confront his accuser or to refute any of the allegations against him. The Board unilaterally "rescinded" (this word was used by the Board, *see* Settled Record p. 8–9) his parole on May 2, 1988; and "Order and Findings of Fact and Conclusions on Parole Rescission" was the written caption (ex-parte) sealing his legal fate. Exhibits 1 and 2, granting him parole, are appended hereby.

*v. Solem,* 422 N.W.2d 425 (S.D.1988); *Goodroad v. Solem,* 406 N.W.2d 141 (S.D. 1987); *State ex rel. Burns v. Erickson,* 80 S.D. 639, 129 N.W.2d 712 (1964).

Due process for parolees, suspected of having violated the terms and conditions of parole, is conceivably guaranteed by SDCL 24–15–23.[2] Having granted Winters a parole, his statutory and constitutional rights were triggered. Under my thesis, the majority errs when it attempts to apply a statute and law upon a wrong academic basis, i.e., Winters is *now* applying for parole. The point is: He was granted parole on March 24, 1988 to the state of Kentucky.

I have absolutely no quarrel with *Greenholtz* or *Dace,* cited in the majority opinion. We have a different set of facts before us. Moreover, by reading the dicta of the majority decision, I draw a conclusion that prisoners in our state penitentiary have virtually no protected liberty rights at all. And I would hazard that this is wrong, if not medieval. Prisoners they are, but they are not wholly stripped of their constitutional protections when imprisoned for a crime. They retain a variety of important rights that the courts must be alert to protect. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Hypothetically, let us suppose that a guard or a penitentiary official has an antipathy so great against an inmate that total hearsay and prevarication estops parole implementation. Is it right that a prisoner granted parole would then have his parole rescinded or revoked before he left the institution based upon hostility and prevarication? Procedural due process is a friend of the masses and should be used to prevent administrative tyranny. These are my words but they compare favorably with the spiritual holding of *In re Prewitt,* 8 Cal.3d 470, 105 Cal.Rptr. 318, 503 P.2d 1326 (1972).

I have always believed that the right to be heard is a fundamental right of every American citizen. To that belief, I must remain true. My conviction, in this factual scenario, is shared by three respectable authorities: *Green v. McCall,* 822 F.2d 284 (2nd Cir.1987); *Christopher v. U.S. Board of Parole,* 589 F.2d 924 (7th Cir.1978); and *Robinson v. Benson,* 570 F.2d 920 (10th Cir.1978). These cases essentially hold that inmates who have been granted parole, and who are waiting release, are entitled to due process before their parole can be rescinded. However, I must note that these three cases fall within the ambit of the federal habeas corpus regulations. These cases have not been overruled, modified or reversed. It strikes me that liberty is liberty; and that a deprivation of liberty via a parole rescission through constitutional transgression, and a deprivation of liberty in a parole revocation is, qualitatively, the same. I cannot, therefore, in good conscience, accept the holding and dicta of the majority opinion.

For dissertation on the inculcation of the Judeo–Christian ethic, as it relates to family life, see *Matter of S.L.,* 419 N.W.2d 689, 694–98 (S.D.1988) (Henderson, J., dissenting); for its historical influence on the formulation of the Declaration of Independence and the U.S. Constitution, see the same dissent, *infra.*

Deeply imbedded within the American law is the right to confront your accuser. Whence did this spring? I refer to Acts of the Apostles, twenty-fifth chapter, eleventh verse and also the sixteenth verse. Of course, I refer to Holy Scripture and the accusations against St. Paul, then Paul of Tarsus. Paul was brought before Festus, a Roman governor. Paul was accused of serious charges but steadfastly maintained that he should not be severely punished unless the charges were proven. Later, he was brought before King Agrippa (thirteenth verse of chapter twenty-five) whereupon due process was immortalized. Festus laid Paul's case before King Agrippa expressing, *inter alia,* in verse sixteen: "But I told them that Romans are not accustomed to give any man up before the

2. It is also obviously guaranteed by South Dakota Constitution Art. VI, § 2, which provides, *inter alia:* "No person shall be deprived of life, *liberty* or property without *due process* of law." (emphasis supplied mine).

accused has met his accusers face to face and has been given a chance to defend himself against the charges." [3] Later, we find in verse 27 wherein the Roman governor expressed: "For it seems to me unreasonable to send a prisoner without stating the charges against him."

In my quest for justice, in my hope to shelter those whose liberties are unfairly withheld, in my enduring faith in the great writ of liberty, I would reverse the habeas corpus court and remand this case so that this prisoner could face his accuser and have an opportunity reply to these "Star Chamber" charges. For, in the end, isn't justice really about fairness?

---

**3.** Where was "due process", in the United States Constitution, born? From whence did it originally evolve?