Filed 12/1/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| In re JEREMY J. FOSTER,<br><br>    on Habeas Corpus. | A160713<br><br>(Humboldt County<br>Super. Ct. No. CR2001183)<br>ORDER MODIFYING OPINION;<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on November 1, 2022, be modified as follows:

1.    On page 7, in the first full paragraph, replace the last sentence with the following two sentences:

Foster was sworn—the Board apparently reserving the right to ask him questions, even though part of its stated reason for refusing to subpoena witnesses was that the panel would not question him. As it happened, no questions were posed.

1

2. On page 9, in the first full paragraph, insert the following after the first sentence:

In the context of a parole rescission hearing, due process entitles an inmate, at a minimum, to the procedural rights established by the United States Supreme Court in *Morrissey v. Brewer* (1972) 408 U.S. 471. (*In re Prewitt* (1972) 8 Cal.3d 470, 476.) Additional grounds for a due process claim may be found in the statutes and regulations governing the Board. (*In re Fain* (1983) 139 Cal.App.3d 295, 307.)

3. On page 11, replace the first sentence in section B with the following:

Respondent begins its discussion of due process with a lengthy and multi-pronged argument that Foster forfeited his due process challenge by failing to object at the rescission hearing to the denial of his request to subpoena witnesses and by failing to follow his attorney's advice.

4. On pages 13-14, replace the first two sentences in section D with the following:

The Board denied Foster's request for witnesses on the ground that no evidentiary witnesses could provide testimony that was relevant to the Board's evaluation of "the governor's concerns in light of the record available at the time of [Foster's] grant of parole." The Board's rationale was rejected in *Johnson*, *supra*, 35 Cal.App.4th at pages 171-172.

5.     On page 15, in the second full paragraph, at the end of the second sentence, add the following as footnote 8, with the resulting renumbering of subsequent footnotes:

The Board filed a petition for rehearing on the last possible day (Cal. Rules of Court, rule 8.268(b)(1)(A)).  In that petition, which we denied, the Board raised arguments it had never made before.  The Board contended for the first time that *Johnson* did not apply to Foster's case because different regulations were in effect when *Johnson* was decided, and the Board justified its refusal to call Foster's requested witnesses on the basis of a regulation that had never been cited to us, let alone to Foster, as a reason to deny his request.  Indeed, counsel for the Board indicated that she was not even aware of the regulation until after oral argument.

It is a fundamental principle of appellate practice that "[n]ew arguments and authorities generally *cannot* be asserted for the first time in a petition for rehearing and will be disregarded by the court." (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2021) ¶ 12:25, citing *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092, abrogated on other grounds by *Martinez v. Combs* (2010) 49 Cal.4th 35.)  "Counsel must ensure that all points are properly presented in the original briefs and argument before the matter is submitted . . ., for once the case is submitted, we assume that counsel 'have presented all the reasons upon which they rely for an affirmance or a reversal of the judgment.' " (*Alameda County Management Employees Assn. v. Superior Court* (2011) 195 Cal.App.4th 325, 338, fn. 10.)  Although we have discretion to address arguments first raised in a petition for rehearing, we decline to " ' "submit to

3

piecemeal argument and will not consider on petition for rehearing questions not previously raised" ' absent extraordinary circumstances." (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1230, fn. 5.) There are no such circumstances here.

As to *Johnson*: we *specifically* raised the issue of the applicability of *Johnson* in our order requesting informal opposition to Foster's petition. Yet the Board did not argue that changes in its regulations made *Johnson* inapposite in its informal opposition to this court, or in its return in response to our order to show cause, or even at oral argument. Nor did the Board offer any reason for its failure to raise the claimed inapplicability of the case until its last-minute petition for rehearing. We disregard the Board's untimely argument and express no opinion as to its merit.

As to the newly-cited regulation: in its petition for rehearing, the Board argued for the first time that it properly denied Foster's request because the witnesses Foster sought to subpoena did not meet the Board's regulatory definition of evidentiary witnesses. The Board cited subdivision (b)(44) of section 2000 of title 15 of the California Code of Regulations, a regulation that was not mentioned in the Notice of Hearing Rights that was sent to Foster, or in the Board's letter informing Foster that his request for witnesses was denied. More important with respect to the petition for rehearing, the regulation was not cited in the Board's informal opposition or in its return or at oral argument. In opposing the Board's petition for rehearing, Foster argued that, contrary to the Board's view, Dr. Arkowitz, Dr. Grasso, and Dr. Khoo are evidentiary witnesses within the meaning of the regulation, and that the Board's interpretation of the regulation would

4

improperly alter or amend the governing statute (§ 2932, subd. (c)(3)) and would effectively eliminate an inmate's right to call witnesses at rescission hearings conducted as a result of referrals from the Governor under section 3041.1.  We disregard the Board's untimely argument and express no opinion as to its merit.

That said, it bears recalling that this matter arose from the Board sending Foster a Notice of Hearing Rights informing him that under section 2465 of title 15 of the California Code of Regulations he had the right to call witnesses at his rescission hearing and to request that witnesses be subpoenaed.  The Board's reading of its regulations would result in a right that is hollow indeed.  Beyond that, we find it troubling that in seeking rehearing the Board sought to justify its actions with regard to Foster's parole rescission hearing by a belated reference to a regulation of which its own attorneys were unaware.  And it is ironic that under these circumstances the Board asserted that its "interpretation of its regulations . . . is entitled to deference," when up until then the Board had never seen fit to even hint at the existence of this regulation either to Foster or this court, and its counsel professed in the petition for rehearing to be "unaware of this definition" even at oral argument.

6.      On page 15, in the second full paragraph, delete the word "And" at the beginning of the third sentence, so the sentence begins, "Under the principles stated in *Johnson* . . . ."

7.      On page 18, in the first sentence of the second full paragraph, delete the words "in accordance with due process and the Board's rules."

5

8. On page 18, in the second sentence of the second full paragraph, insert a comma after the third word ("remand") and replace the words "would be entitled under sections 2365 and 2668 of title 15 of the California Code of Regulations" with "will be entitled."

9. Respondent's petition for rehearing is DENIED.

There is no change in the judgment.

Dated:_____          _____
                                       Richman, Acting P.J.

Court:  Humboldt County Superior Court

Trial Judge:  Hon. Gregory J. Elvine-Kreis

L. Richard Braucher, under appointment of the Court of Appeal, for Petitioner

Rob Bonta, Attorney General; Phillip J. Lindsay, Assistant Attorney General; Sara J. Romano, Jennifer G. Ross, Deputy Attorneys General, for Respondent

A160713, *In re Jeremy J. Foster on Habeas Corpus*

Filed 11/1/22 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JEREMY J. FOSTER<br><br>on Habeas Corpus. | A160713<br><br>(Humboldt County<br>Super. Ct. Nos. CR2001183,<br>CR974999) |

Petitioner Jeremy J. Foster, a state prison inmate, was sentenced in 1998 to an indeterminate term of 23 years to life in state prison. After the Board of Parole Hearings (the Board) found him suitable for parole in 2019, the Governor referred the decision to the Board for en banc reconsideration under Penal Code section 3041.1. The Board then ordered a rescission hearing to determine whether the grant of parole was improvident, based on the concerns raised by the Governor.

As was his right under the regulations governing parole rescission hearings (and as he had been informed in writing by the Board), Foster requested the presence of evidentiary witnesses at the rescission hearing, including the author of the Comprehensive Risk Assessment that the Governor quoted from and relied on in his referral letter. But the Board denied Foster's request for witnesses, and at the rescission hearing the panel rescinded the grant of parole. Foster petitioned for a writ of habeas corpus, raising as his primary argument that the Board improperly denied his request to subpoena witnesses for the rescission hearing.

1

In requesting informal opposition to the petition, we specifically asked respondent to address the apparent contradiction between the applicable statutes and regulations, and the Board's rationale for denying Foster's request, which was simply that "the Board does not subpoena witnesses for rescission hearings conducted as a result of referrals from the Governor under Penal Code section 3041.1." We also noted that the Board's rationale had apparently been previously rejected in *In re Johnson* (1995) 35 Cal.App.4th 160, 170-172 (*Johnson*). We later issued an order to show cause, and the matter has now been fully briefed and argued.

We conclude that the Board's denial of Foster's request to present witnesses violated the Board's own procedural rules as well as Foster's due process rights. We therefore vacate the Board's decision to rescind its grant of parole, and remand to the Board to conduct a new rescission hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Commitment Offenses, Conviction, and Sentencing*

We draw our account of Foster's commitment offenses, plea, and sentencing from our opinion affirming the judgment. (*People v. Jeremy John Foster* (Oct. 20, 1999, A083699 & A086456) [nonpub. opn.].)

On October 20, 1997, two 14-year-old girls were walking toward a wooded area near their school when Foster, then 21 years old, approached them and drew a knife. He told them to get on the ground and not try to run or he would kill or stab them. When one of the girls started to run, he grabbed her and flung her to the ground. He ordered the girls to lie face down on the ground and told them that if they listened to him, " 'they might make it out of this.' " Then he had them get up, ordered them to look forward, and he walked them into the woods, where he told them to remove all their clothes and had them lie face down on the ground.

2

Foster poked them in the buttocks with his knife and told them to move where he wanted them.  He made one girl spread her legs, then pushed his fingers into her vagina.  Then he penetrated her with "something else" and told the other girl that if she made any noise, he would put his knife into her, too.  He then removed the knife and had the first girl touch his penis and told her to put it into herself.  He pushed his penis in and out of her vagina, and made her touch it again after taking it out.  Then he had the other girl touch his penis and put it inside her.  He could not fully penetrate her, and he stopped.  Foster then told the girls to count to 100, and that if they got up before then he would kill them.  He fled the scene.

In June 1998, Foster entered a negotiated plea of guilty to two counts of forcible sexual penetration with a foreign object, one count for each victim. (Pen. Code,[1] § 289, subd. (a).).  He was sentenced to 15 years to life on one of the counts, with special allegations including serious-felony status (§ 1192.7, subd. (c)(23)) and use of a deadly weapon, a knife, within the meaning of section 667.61, subdivisions (b) and (e)(4) (the "one-strike" law).  He was sentenced to a fully consecutive upper term of eight years on the second count, for a total of 23 years to life.

B.    *February 2019 Parole Hearing and Subsequent Proceedings*

On February 12, 2019, at a parole suitability hearing held under the statutes governing inmates serving indeterminate sentences (§ 3041), the Board found that Foster was suitable for parole and did not pose an unreasonable current risk of danger if released at that time.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Governor Gavin Newsom requested reconsideration of the decision to grant Foster parole, as he is authorized to do by section 3041.1.[2] In his request, the Governor commended Foster for making progress towards rehabilitation, but stated that he was not convinced Foster was ready for release. The Governor was not convinced that Foster had "properly addressed the factors that led him to perpetrate such sexual violence"; was "troubled" by Foster's "continued substance abuse and misconduct in prison," including "disrespecting staff on multiple occasions and several violations related to drug and alcohol abuse"; and in light of Foster's recent sobriety, was concerned about Foster's "risk of relapse and its impact on his potential for future violence."[3] The Governor wrote that his concerns were supported by the Comprehensive Risk Assessment that had been prepared by forensic psychologist Steven Arkowitz. The Governor stated, "In finding that Mr. Foster represents a moderate risk of future violence, the evaluating psychologist noted that, while Mr. Foster has taken responsibility for his actions in the life crime and expressed remorse, there 'is a significant sexual component that Mr. Foster seems to have not yet fully addressed.' " The

---

[2] Section 3041.1, subdivision (a) provides, "Any time before an inmate's release, the Governor may request review of a decision by a parole authority concerning the grant or denial of parole to any inmate in a state prison. The Governor shall state the reason or reasons for the request, and whether the request is based on a public safety concern, a concern that the gravity of current or past convicted offenses may have been given inadequate consideration, or on other factors."

[3] The Governor noted in his referral letter that Foster "admitted to the Board that his crimes were a result of self-medication with marijuana and methamphetamines. He acknowledged alcohol use until 2007 and marijuana use until four years ago. Mr. Foster told commissioners that it was only when he lost visits with his father as a result of his 2015 rule violation that he finally stopped using."

4

Governor further wrote: "The psychologist wrote in 2018[4] that while Mr. Foster has recognized his substance abuse problems, he 'needs to continue to address and strengthen his plan to avoid drug and alcohol relapse.' The psychologist found that 'Mr. Foster has not consistently complied with supervision or treatment during his incarceration,' and noted that 'it is not clear that Mr. Foster would be able to fully comply with supervision and programming requirements in the community.' The psychologist concluded, 'Mr. Foster has struggled with emotional and behavioral instability throughout his life. While he has made some progress in recent years, he has not yet sustained his gains towards greater maturity and personal responsibility.' "

The Board ordered a rescission hearing, which was set for October 8, 2019.

In July 2019, Foster received a three-page form from the Board entitled "Notice of Hearing Rights – Parole Consideration Hearing/Rescission Hearing."[5] Enumerated paragraph 5 of the notice bears the bold-faced heading "Witnesses," and states: "You may not call witnesses at a parole consideration hearing. [Citation.] At a rescission hearing you may call evidentiary witnesses and may request that witnesses (including adverse witnesses) be subpoenaed. (15 CCR § 2465.)" Foster's signature appears on the form under a statement that he read and understood his rights, and the form is countersigned by a person identified as a "correctional counselor."

---

[4] The report was actually dated June 25, 2017.

[5] The footer on the form is "BPH 1002 Notice of Hearing Rights Parole Consideration/RESC (Rev. 01/19)." The form appears to have been prepared for Foster, since his name and CDCR number are printed at the bottom of each page of the form, and his CDCR number is preprinted on the signature line at the end of the document.

5

On August 9, 2019, Foster wrote to the Board asking that four evidentiary witnesses be subpoenaed to attend the hearing: Dr. Arkowitz, as the author of the 2017 Comprehensive Risk Assessment that was discussed in the Governor's referral letter; Dr. Grasso, a treating staff psychologist at the California Men's Colony who issued a laudatory chronology in January 2019; Dr. Khoo, a treating psychiatrist; and Governor Newsom, as author of the letter initiating the rescission process. Foster stated that all the witnesses "have information critical in my opportunity to present evidence," and that each of them "has made clear and documented statements, either supportive or adverse to my previous grant of parole."[6]

A staff attorney for the Board responded to Foster's letter on August 29, 2019, stating that the request for witnesses was denied. The letter explained, "Please note, the Board does not subpoena witnesses for rescission hearings conducted as a result of referrals from the Governor under Penal Code section 3041.1. The focus of the rescission hearing will be evaluating the Governor's concerns in light of the record available at the time of your February 12, 2019 grant of parole. The hearing panel will not be gathering new evidence during the hearing, such as from witness testimony or from asking you questions. Rather, you, your attorney, and the District Attorney may make a statement to the hearing panel addressing the concerns highlighted in the Governor's . . . referral letter . . . before the hearing panel issues its decision regarding whether there is good cause to rescind your grant of parole based on the Governor's concerns. Evidentiary witnesses are

---

[6] Foster stated in his letter that he had previously contacted his appointed attorney, his assigned staff assistant, and the Board's "Lifer desk" at the California Men's Colony – East, where he was incarcerated, to determine how to exercise his right to call witnesses, but to no avail.

6

not relevant for conducting the rescission hearing and making the necessary determination."

Foster attended the October 8, 2019 rescission hearing with his appointed counsel. At the beginning of the hearing, the presiding commissioner stated that the panel had reviewed Foster's "central file," including the transcript of the hearing at which Foster was granted parole and the Governor's referral to the Board. The presiding commissioner said, "Okay. So it's mostly a paper review. So, . . . as we read through the, um, information, just in case we ask you a question, we're probably not going to, I want to go ahead and swear you in." Foster was sworn, but no questions were posed to him.

With the preliminaries completed, the presiding commissioner read portions of the Governor's letter, noting that the Governor had identified areas in which the evaluation by Dr. Arkowitz supported his concerns; summarized Foster's prison disciplinary record; and read from, summarized, and described portions of the transcript from the February 2019 hearing at which parole had been granted. After Foster's attorney made a closing statement, the panel recessed for deliberation. The hearing, including preliminary advisements, had lasted 21 minutes. The panel returned after short deliberations to announce its decision.

The presiding commissioner stated there was good cause to rescind Foster's parole, and continued: "We reviewed the issues raised by the Governor's side, in the Governor's letter, dated May 15, 2019, and based on our review, we have determined that this was an improvident grant. We reviewed the information. Um, there was information in regards to the three areas, um, of concern, um that Mr. Foster had not properly addressed the factors that led him to perpetrate with [*sic*] such extreme violence. Uh, upon

7

review, we determined that the granting Panel gave insufficient weight to this concern, as noted by the Governor.  Um, we also reviewed the rule violations, um, those reports that's the last was in 2015, but went from '14, two in '14, one in '13, one in '12, one at '10, 70706202 [*sic*], and  2000.  And we determined that the granting Panel gave insufficient weight to this concern as noted by the Governor.  Also, um, the last area of concern was Mr. Foster's risk for relapse and its impact on his potential for future violence.  And in our record review, we did determine that the granting Panel gave insufficient weight to this concern, as noted by the Governor[,] as there was no formal discussion about how relapse may impact his potential for violence.  And certainly without reviewing, um, that and even exploring that area, um, Mr. Foster remains an unreasonable risk to the public."

In March 2020, Foster petitioned the superior court for a writ of habeas corpus, arguing that the Board's refusal to subpoena witnesses for the rescission hearing was a violation of his due process rights.  In July 2020, the superior court denied the petition as moot, apparently because Foster had been denied parole at a suitability hearing held in June 2020.

In August 2020, Foster filed a petition for writ of habeas corpus in this court.  After we issued our order to show cause, Foster was denied parole at a further suitability hearing held in August 2021.

## DISCUSSION

A.    *Applicable Law*

We summarized the general legal standards in *In re Stoneroad* (2013) 215 Cal.App.4th 596:  "The Board's parole authority is governed by a body of statutes and regulations as mandated by the Legislature, most notably Penal Code section 3041 (section 3041) and title 15, section 2402, of the California Code of Regulations.  ' "Subdivision (b) of section 3041 provides that a release

8

date must be set 'unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of the current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual,' and mandates that the Board 'normally' set a parole date for an eligible inmate, and must do so unless it determines [that] an inmate poses a current threat to public safety." ' [Citations.] As a result, parole applicants have a 'due process liberty interest in parole' and 'an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation.' [Citations.]" (*Id.* at p. 615.)

The Board's broad discretion in parole matters "is subject to the prisoner's right to procedural due process. [Citations.]" (*Johnson*, *supra*, 35 Cal.App.4th at p. 170.) In *Johnson*, Division Four of this Court discussed the specific procedures attendant to a parole rescission hearing: "Both the Penal Code and the regulations implementing those provisions promulgated by the Board confer very specific procedural rights on the prisoner at the rescission hearing. [Citations.] Included is the right to request the presence of witnesses . . . . (§ 3041.5; Cal. Code Regs., tit. 15, §§ 2465, 2668.) The prisoner's witnesses 'shall' be called unless the Board 'has specific reasons to deny this request' and advises the prisoner of those reasons in writing. (§ 2932, subd.(c)(3); see § 3041.5[7] . . . .)" (*Johnson*, *supra*, 35 Cal.App.4th at p. 170.)

---

[7] Section 3041.5, subdivision (a)(5) states that in a hearing for the purpose of rescinding parole, an inmate is afforded the rights set forth in section 2932, subdivision (c)(3).

9

The very regulation that was cited to Foster in his Notice of Hearing Rights under the heading "Witnesses," states in its present version, "The prisoner shall have the right to request the presence of evidentiary witnesses at a rescission hearing.  The witnesses shall be called unless the hearing panel has specific reason to deny the request.  Witnesses shall be screened in accordance with the procedures of § 2668.  The prisoner may request subpoenas . . . as provided in §§ 2675-2682.  If denied, the specific reasons for denial shall be documented and a copy of the document given to the prisoner.  During the hearing, the prisoner has the right, under the direction of the hearing panel, to question all witnesses."  (Cal. Code Regs., tit. 15, § 2465, subd. (c).)

The regulations further provide that a request for witnesses "must be made sufficiently ahead of the hearing to notify the witnesses and to make arrangements to have them present at the hearing."  (Cal. Code Regs., tit. 15, § 2668, subd. (a)(1).)  With respect to evidentiary witnesses, the regulations state: *"Staff shall determine that the testimony of an evidentiary witness is clearly irrelevant before refusing to call the witness*.  (Examples of irrelevant witnesses include a public official having no knowledge of the violation or witness with no knowledge or evidence in mitigation.)  A requested evidentiary witness should ordinarily be notified to attend even though the testimony may be cumulative, such as where several persons witnessed the incident."  (*Id.,* § 2668, subd. (b)(1), italics added.)

The regulations further provide for subpoenas, if necessary.  ("A subpoena . . . shall be issued when it is necessary to secure the presence of a witness . . . for a proceeding.  Subpoenas shall be issued for evidence that is relevant and material."  (Cal. Code Regs., tit. 15, § 2677, subd. (a).)  "Requests for subpoenas for witnesses shall be screened in accordance with

10

the procedures of § 2668. . . . [¶] . . . Requests for subpoenas for evidentiary witnesses shall ordinarily be granted even though the testimony may be cumulative . . . ." (*Id.*, § 2677, subd. (b).)

We review a due process violation at a parole hearing under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*Johnson*, *supra*, 35 Cal.App.4th at p. 172.)

B.      *Forfeiture*

Respondent's first argument is that Foster forfeited his due process challenge by failing to object at the rescission hearing to the denial of his request to subpoena witnesses. Respondent asserts that even though the Board had rejected his request in writing, Foster was required to raise the issue at the hearing to preserve his request. Respondent's argument relies on language in the regulation that provides inmates the "right to request the presence of evidentiary witnesses *at a rescission hearing*." (Cal. Code Regs., tit. 15, § 2465, subd. (c), italics added.) This misreads the regulation. The phrase "at a rescission hearing" does not impose any requirement as to *when* the request must be made. Instead, it reflects *where* the witnesses will be present. This commonsense reading is reflected in another regulation stating that an inmate's request for witnesses "must be made sufficiently *ahead of the hearing* to notify the witnesses and to make arrangements to have them present at the hearing" (*id.*, § 2668, subd. (a)(1), italics added), and that if the Board refuses to call a witness, the inmate "shall be told of the refusal *prior to the hearing*." (*Id.*, § 2668, subd. (b), italics added.)

Respondent argues that had Foster objected to the denial of his request for witnesses at the rescission hearing the Board could have considered it and decided whether to request subpoenas at that time. (See Cal. Code Regs., tit.

11

15, § 2677, subd. (d) [authorizing the rescission panel to request subpoenas "as they deem necessary" after the hearing has commenced, with the hearing to be continued and rescheduled].)  Perhaps, but any objection here would have been futile given the Board's earlier categorical rejection of Foster's request:  Foster was informed unequivocally that "the Board does not subpoena witnesses for rescission hearings conducted as a result of referrals from the Governor under Penal Code section 3041.1."  In any event, we see nothing in the regulations that requires a renewed request for witnesses at a hearing to preserve a challenge when the request has previously been made and denied.

Nor are we persuaded by respondent's theory that Foster forfeited his due process challenge by not following his attorney's advice.  In September 2019, after the Board denied Foster's request to subpoena witnesses, Foster's attorney wrote to him that she had been advised that Foster must "go through your Correctional Counselor for your requests for subpoenas."  Even if Foster did not follow his attorney's guidance, as respondent asserts, respondent fails to explain why that would constitute a forfeiture of Foster's challenge to the Board's denial of his request.  Nor do the authorities on which respondent relies bear on this issue; they address the principle that an appellate court will not consider a claim of error that could have been, but was not, raised in the trial court.  (See *People v. Stowell* (2003) 31 Cal.4th 1107, 1114, citing *People v. Vera* (1997) 15 Cal.4th 269, 276.)  That is not this case.

In sum, because Foster requested the Board to subpoena witnesses for the rescission hearing and the Board unequivocally denied his request, there was nothing more that Foster had to do to preserve his claim of error.

C.    *Mootness*

Likewise, we find unpersuasive respondent's contention that Foster's petition is moot because after the October 2019 rescission hearing he received two further parole suitability hearings where he had the opportunity to present new information to the Board. Respondent's position assumes that because Foster had the opportunity to present evidence from his requested witnesses to rebut the Governor's concerns there is no effective relief that this court could provide him. (See *Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1503 ["A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief"].)

But a suitability hearing is not the same as a rescission hearing. Although Foster had the opportunity at his subsequent suitability hearings to present *documentary* evidence from the people he sought to call as witnesses at the rescission hearing (Cal. Code Regs., tit. 15, § 2249), he did not have the right to call them as witnesses to testify and to question them. (See § 3041.5, subd. (a)(5) [inmates at rescission hearings have the rights set forth in § 2932, subd. (c)(3) & (4)]; see also Cal. Code. Regs., tit. 15, § 2665 [at rescission hearing, "[a]ll evidence relevant to the charges or disposition is admissible"] & §§ 2666-2682 [concerning evidence and subpoenas in the context of rescission hearings].)

Because this court can provide Foster with effective relief by requiring the Board to conduct a new recission hearing, Foster's petition is not moot. We now turn to the merits of Foster's claim that the Board should have granted his request for witnesses.

D.    *Denial of Request to Present Witnesses*

The Board denied Foster's request for witnesses on the basis of its determination that no evidentiary witnesses could provide testimony that

13

was relevant to the Board's evaluation of "the governor's concerns in light of the record available at the time of [his] February 12, 2019 grant of parole." The Board's rationale was rejected in *Johnson*, *supra*, 35 Cal.App.4th at page 172. Although the facts of *Johnson* are not identical to the facts before us, the facts here require the same outcome.

In *Johnson*, the petitioner had been found suitable for parole at a December 1981 hearing. (*Johnson*, *supra*, 35 Cal.App.4th at p. 163.) Years later, shortly before Johnson was scheduled to be released on parole, the Governor requested the Board to review its decision en banc, citing concerns about public safety and the gravity of Johnson's commitment offenses. (*Ibid*.) The Board ordered a rescission hearing. Among the reasons for its decision to order the hearing were the concerns expressed by the Governor in his letter requesting en banc review and the fact that "a clinical evaluation of Johnson in September of 1981 had concluded that Johnson's potential for violence on parole was unpredictable." (*Id*. at pp. 163-164, 165.)

Johnson, who had been released from prison pending the rescission hearing, was returned to prison about a year later, after which a rescission hearing was held. (*Johnson*, *supra*, 35 Cal.App.4th at p. 164.) The Board denied Johnson's request to present witnesses at the rescission hearing, stating, " 'this panel is considering this as a fact-finding phase of the hearing related to written evidence and the record that was considered . . . by the 1981 hearing panel that granted parole.' " (*Id*. at p. 165.)

The Board rescinded parole, based on its finding that the granting panel "gave an improvident grant by not giving adequate weight to all the available issues," specifically, the clinical evaluation "which indicated to the Board that Johnson's release would pose a danger to public safety," and the

14

gravity of Johnson's crimes. (*Johnson*, *supra*, 35 Cal.App.4th at pp. 165, 168.)

In *Johnson*, the Court of Appeal found that the Board improperly denied Johnson's request for witnesses. The sole reason the Board gave for denying the request was incorrect as a matter of fact, because the Board did not confine its review to the record of the 1981 hearing. (*Johnson*, *supra*, 35 Cal.App.4th at p. 171.) The court added, "But even if the Board had limited its review to the record of the 1981 hearing, Johnson should have been permitted to call witnesses whose testimony would have been relevant to understanding or interpreting that record, including the [clinical evaluation] the Board found so important." (*Ibid*.) The Court of Appeal concluded that in denying Johnson's request for witnesses the Board violated its own rules and "the fundamental tenets of due process which apply to the rescission hearing." (*Id.* at pp. 171-172.)

The Board here erred in summarily denying Foster's request for witnesses with the statement that "the Board does not subpoena witnesses for rescission hearings conducted as a result of referrals from the Governor under Penal Code section 3041.1," and in asserting "[e]videntiary witnesses are not relevant for conducting the rescission hearing and making the necessary determination." Just as in *Johnson*, the Board violated its own rules and the tenets of due process in denying Foster's request to call witnesses at his rescission hearing. And under the principles stated in *Johnson*, Foster should have been permitted to call witnesses whose testimony would have been relevant to understanding or interpreting the

15

record before the February 2019 hearing, including Dr. Arkowitz, Dr. Grasso, and Dr. Khoo.[8]

We cannot find this error to be harmless beyond a reasonable doubt. The question we must consider under the *Chapman* standard is whether the decision to rescind Foster's parole made at the October 2019 hearing " 'was surely unattributable to' " the Board's error in refusing Foster's request to call witnesses. (See *People v. Quartermain* (1997) 16 Cal.4th 600, 621 [explaining the *Chapman* standard as it applies to a guilty verdict at trial].)

Two of the witnesses Foster sought to call were Dr. Arkowitz, who wrote the Comprehensive Risk Assessment that was the principal focus of the Governor's referral letter, and Dr. Grasso, a treating staff psychologist whose "laudatory chrono" was also part of the record. Dr. Arkowitz's evaluation was written and approved in June 2017 (not in 2018, as the Governor mistakenly stated in his referral). Dr. Grasso's chrono was dated January 7, 2019, more than a year and a half later. Dr. Grasso wrote that Foster "has been on my caseload for approximately 13 months" and that he had been meeting with Foster in individual sessions once a week for approximately 30 minutes. Dr. Grasso described Foster as "a highly intelligent, articulate individual who has made every effort to turn his life around and to be someone better than the person he was when he initially came to prison. He demonstrates remorse for his offense and accepts responsibility for what he has done and the harm he has caused to others. It is apparent to me that he has done considerable soul-searching and introspection and made a concerted effort to

---

[8] Foster does not press his claim for the Governor's testimony, with apparent good reason. (See Cal. Code Regs., tit. 15, § 2668, subd. (b)(1) [recognizing that public officials are ordinarily "irrelevant" witnesses in rescission hearings].) We by no means suggest that such testimony would be proper at a rescission hearing on remand.

almost literally change his personality to someone that himself, his family, and society can be proud of. It has been a pleasure working with him and I anticipate nothing but success for him in the future."

The passage of time since Dr. Arkowitz had prepared his report was an issue raised by the commissioners at the hearing on February 12, 2019 when Foster was found suitable for parole. The presiding commissioner remarked that Dr. Arkowitz's report was "one and a half years old" and that it was "without benefit of the additional self-help programming that you've done . . . since that time." And at the conclusion of that hearing, in announcing the Board's decision that Foster was suitable for parole, the presiding commissioner stated, "We do want to note that the Comprehensive Risk Assessment, uh, prepared by Dr. Arkowitz finds that you present a statistically moderate risk of re-offense in the free community. But we note that this, um, is almost two years old and we believe that with your continued positive behavior and your continued self-help programming, that it may have dropped to a low if it was done, uh, more recently."

It does not require any stretch of the imagination to suppose that if Dr. Arkowitz had been called as a witness at the rescission hearing to testify about the Comprehensive Risk Assessment that had been of concern to the Governor, he would have been asked to discuss the conclusions he reached back in June 2017 in light of Dr. Grasso's January 2019 chrono.

We have no basis to determine what result the panel might have reached had it heard testimony from Dr. Arkowitz, or the other professionals whom Foster sought to call as witnesses, especially in view of the opacity of the panel's decision, which is highly conclusory and largely restates information in the Governor's referral letter. Nor do we suggest what the outcome of the rescission hearing should have been. But we cannot say

beyond a reasonable doubt that Foster's parole would have been rescinded in the absence of error.

In short, the Board, following its rules, regulations, and procedures, found Foster was suitable for parole. The Governor, as was his right, asked the Board to reconsider. The Board ordered a rescission hearing and gave Foster written notice of his hearing rights, including the right to call evidentiary witnesses to testify. But when Foster requested evidentiary witnesses, the Board denied his request, contrary to the applicable regulations.

The appropriate remedy here, as in *Johnson*, is to order the Board to conduct a new rescission hearing in accordance with due process and the Board's rules. (*Johnson*, *supra*, 35 Cal.App.4th at p. 172.) If on remand the Board limits its review to the evidence available at the February 2019 parole hearing, then Foster would be entitled under sections 2465 and 2668 of title 15 of the California Code of Regulations to call witnesses who can present testimony relevant to a reconsideration of the evidence presented at that hearing, including at a minimum Dr. Arkowitz, Dr. Grasso, and Dr. Khoo.[9]

We need not reach the other issues raised by Foster in his petition.

---

[9] As was the case in *Johnson*, we "cannot spell out which . . . witnesses would present relevant testimony for the rescission hearing [because] [t]he answer depends on the evidence the Board elects to review." (*Johnson*, *supra*, 35 Cal.App.4th at p. 172, fn. 10; see also Cal. Code Regs., tit. 15, § 2665 ["All evidence relevant to the charges or disposition is admissible in parole postponement, rescission and revocation proceedings"].) If the Board considers matters that have occurred since the February 2019 hearing, "the scope of relevant testimony would be considerably broadened." (*Johnson*, *supra*, at p. 172, fn. 10.)

**DISPOSITION**

The October 8, 2019 decision of the Board to rescind the February 12, 2019 grant of parole is hereby vacated. The matter is remanded to the Board to conduct a new rescission hearing consistent with this opinion.

_____

Miller, J.

WE CONCUR:

_____

Richman, Acting P.J.

_____

Stewart, J.

A160713, *In re Jeremy J. Foster on Habeas Corpus*

Court:  Humboldt County Superior Court

Trial Judge:  Hon. Gregory J. Elvine-Kreis

L. Richard Braucher, under appointment of the Court of Appeal, for Petitioner

Rob Bonta, Attorney General; Phillip J. Lindsay, Assistant Attorney General; Sara J. Romano, Jennifer G. Ross, Deputy Attorneys General, for Respondent

A160713, *In re Jeremy J. Foster on Habeas Corpus*